IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs May 8, 2002

## STATE OF TENNESSEE v. ERIC B. BLAKEMORE

**Direct Appeal from the Criminal Court for Shelby County**
**No. 98-08053-53     Carolyn Wade Blackett, Judge**

───────────

**No. W2001-01929-CCA-R3-CD - Filed June 18, 2002**

───────────

The Appellant, Eric B. Blakemore, was convicted by a Shelby County jury of one count of second degree murder and one count of attempted second degree murder. After a sentencing hearing, Blakemore received concurrent sentences of twenty-two years for the murder conviction and ten years for the attempted murder conviction. On appeal, Blakemore asserts that the evidence presented at trial was insufficient to support his conviction for second degree murder. Specifically, he argues that the evidence presented supports the lesser offense of voluntary manslaughter. After review, we find the evidence legally sufficient; accordingly, the judgment of conviction is affirmed.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed.**

DAVID G. HAYES, J., delivered the opinion of the court, in which JERRY L. SMITH and ALAN E. GLENN, JJ., joined.

Garland Erguden, Assistant Public Defender; AC Wharton, Jr., Shelby County Public Defender, Memphis, Tennessee, for the Appellant, Eric Blakemore.

Paul G. Summers, Attorney General and Reporter; Michael Moore, Solicitor General; J. Ross Dyer, Assistant Attorney General; William L. Gibbons, District Attorney General; and Charles Bell, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

### Factual Background

Tameka Boyland, the victim, and the Appellant had maintained a relationship since June of 1996. The Appellant and the victim, who was five months pregnant with the Appellant's child, were engaged to be married. On February 16, 1998, the victim received a telephone call from Dynessa Lowe. Ms. Lowe informed the victim that she was living with the Appellant and his two children.

Both the victim and Ms. Lowe confronted the Appellant and he admitted to dating both women at the same time.

The victim called the Appellant the next day and requested that he stop by her apartment after work. The Appellant agreed and later arrived at the victim's apartment where she lived with her mother, Glenda Roy. Ms. Roy was present as the victim told the Appellant that their relationship was over. According to Ms. Roy, when the Appellant later left the residence "He was fine. Calm. In control. Just very calm about it." At trial, the Appellant agreed that he had no problem with the victim's decision to end the relationship, stating "that was her choice and we came to an agreement with that. You know, I loved her and cared for her, but that was the choice that she had decided upon and she made that choice."

The next morning, on February 18, 1998, at approximately 8:00 a.m., Ms. Roy was awakened by the victim who was screaming for the Appellant to put the gun down and not hurt her. Ms. Roy gathered the victim's two children, ages two and four, and they ran downstairs. As Ms. Roy reached the bottom of the staircase, she saw the Appellant standing over the victim "with a sawed-off shotgun pointed at her face." Ms. Roy began screaming for the Appellant not to hurt her daughter. The Appellant then turned around, pointed the gun at Ms. Roy, and stated, "You don't have anything to do with this. This is not your business, go back upstairs."

Ms. Roy ran back up the staircase with the children. When she reached the upstairs bedroom, she placed the children in bed and kicked out a window so she could escape and get help. Ms. Roy jumped from the second story window and landed on the ground. As she landed, she heard "a boom" and described what took place next as follows:

> I mean, it's like he shot her. He shot her, you know. And I went next door to try to get some help, no one was home. And as I was knocking on the door next door he came out of the house, and I saw him, he pointed the gun at me and I just started running across the courtyard. He shot at me, tried to shoot me in my back.

Ms. Roy ran to another apartment directly beside the victim's apartment. Nicole Jennings let Ms. Roy inside and informed her that she had already called for emergency assistance. Shortly thereafter, Ms. Jennings heard another knock at her door. When she opened the door this time, the victim fell inside the doorway and collapsed. The postmortem examination revealed that the victim died as a result of a gunshot wound to the neck with additional involvement to the lower portion of the jaw.[1] The medical examiner estimated that the range of fire was between three feet and eighteen feet based upon the pellet spread pattern.

---

[1] At the time of the victim's death, the fetus would not have been viable outside the womb.

# ANALYSIS

## Sufficiency of the Evidence

A jury conviction removes the presumption of innocence with which a defendant is cloaked and replaces it with one of guilt, so that on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). In determining the sufficiency of the evidence, this Court does not reweigh or reevaluate the evidence. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). The defendant must establish that the evidence presented at trial was so deficient that no rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *State v. Cazes*, 875 S.W.2d 253, 259 (Tenn. 1994), *cert. denied*, 513 U.S. 1086, 115 S. Ct. 743 (1995); Tenn. R. App. P. 13(e). The State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992), *cert denied,* 507 U.S. 954, 113 S. Ct. 1368 (1993).

The Appellant contends that the evidence presented at trial is insufficient to support his conviction for second degree murder. Second degree murder is defined as the "knowing killing of another." *See* Tenn. Code Ann. § 39-13-210(a)(1). "[A] person acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result." Tenn. Code Ann. § 39-11-302(b). Voluntary manslaughter, on the other hand, is "the intentional or knowing killing of another in a state of passion produced by adequate provocation sufficient to lead a reasonable person to act in an irrational manner." Tenn. Code Ann. § 39-13-211(a). The Appellant contends that the victim's homicide resulted from "passion and adequate provocation" based upon the victim's threats that she would have her ex-boyfriend hire someone to kill the Appellant, after learning of his relationship with Dynessa Lowe. The issue of what constitutes adequate provocation is a question of fact which must be decided under the particular facts of each case by the jury. *State v. Johnson*, 909 S.W.2d 461, 464 (Tenn. Crim. App. 1995). When the evidence is conflicting, the jury must resolve these conflicts under proper instructions, which were provided in this case, and decide whether the homicide is murder or manslaughter. Thus, it was for the jury to determine whether the killing of the victim by the Appellant occurred in a state of passion produced by provocation or whether the Appellant's action was simply retribution for termination of the parties' relationship.

In the present case, Ms. Roy testified that she was present with the victim and the Appellant the night prior to the murder and listened as the victim told the Appellant that their relationship was over. According to Ms. Roy, the Appellant was calm throughout the evening and it appeared as if nothing was wrong when he left later that night. Ms. Roy recalls hearing no threats by the victim to have the Appellant killed. The Appellant corroborated this testimony by acknowledging that he was not upset about the parties' break-up. Nonetheless, Ms. Roy was awakened the next morning by her daughter's screams. Ms. Roy witnessed the Appellant placing a sawed-off shotgun to the victim's head. The Appellant admits that he fired the shot which resulted in the victim's death. In this case, the jury obviously rejected the Appellant's claim of provocation, as is their prerogative.

We find that a rational trier of fact could have found beyond a reasonable doubt that the Appellant knowingly killed the victim.

## CONCLUSION

After review, we find that the evidence introduced at trial, taken in the light most favorable to the State, is more than sufficient to support the Appellant's conviction for second degree murder. Thus, we affirm the judgment of the Shelby County Criminal Court.

_____

DAVID G. HAYES, JUDGE